IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00804-PAB

TAMMY BOCOCK o/b/o JT, minor,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Tammy Bocock on behalf of minor JT, claimant, on April 01, 2022. Plaintiff seeks review of the final decision of defendant (the "Commissioner") denying claimant's application for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83(c). Docket No. 1 at 1, ¶ 2. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

On December 7, 2018, claimant applied for supplemental security income under Title XVI of the Act. R. at 26.[2] Claimant's application was initially denied on May 15, 2019 and denied on reconsideration on August 27, 2020. *Id.* Claimant requested a hearing before an administrative law judge ("ALJ"). *Id*. On May 12, 2021, the ALJ held

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.
[2] There is some discrepancy in the record as to whether plaintiff applied for benefits on December 7, 2018 and January 8, 2019. *Compare* R. at 28 *with* R. at 169.

a hearing.  *Id*.  On June 3, 2021, the ALJ issued a decision denying claimant's application.  R. at 36.

The ALJ found that claimant was a school-age child on the date the application was filed and remained an adolescent at the time of review.  R. at 27.  The ALJ determined that the claimant had not engaged in substantial gainful activity since the application date and had severe impairments of autism spectrum disorder, attention deficit hyperactivity disorder ("ADHD"), major depressive disorder ("MDD"), and neurocognitive disorder.  *Id.*  The ALJ also found that plaintiff has a non-severe impairment of hearing loss.  *Id.*  The ALJ determined the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  R. at 27–28; *see also* 20 C.F.R. §§ 416.924, 416.925, and 416.926.  After a review of the record and considering the six functional domains required by 20 C.F.R. § 416.926, the ALJ further determined that claimant did not have an impairment or combination of impairments that functionally equals the listed impairments.  R. at 27–36.  Ultimately, the ALJ ruled claimant was not under a disability from December 7, 2018 until June 3, 2021.  R. at 36.

Claimant requested review of the ALJ's decision by the Appeals Council, which was denied on November 18, 2021.  R. at 15.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel*

2

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005))*.*  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE THREE-STEP EVALUATION PROCESS

To qualify for disability benefits, a minor claimant must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).  To determine whether a child has such a disability, the ALJ must

follow a three-step evaluation; the ALJ must find "(1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Id.* (citing 20 C.F.R. § 416.924(a)).

At step three, the ALJ must consider whether the impairment, alone or in combination with another impairment, medically or functionally equals a listing. 20 C.F.R. § 416.924(a). When determining whether the impairment functionally equals a listing, the ALJ must determine whether the child has a "marked" limitation in two or an "extreme" limitation in one of the following domains: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [him]self; and, (vi) [h]ealth and physical well-being." *Id.*, § 416.926a(b)(1). Limitations are "marked" if they "interfere[ ] seriously with  [a person's] ability to independently initiate, sustain, or complete activities." *Id.,* § 416.926a(e)(2)(i). Such limitations are "more than moderate" but "less than extreme." *Id.* An "extreme" limitation is one that "interferes very seriously" with a person's ability to function and is "more than marked." *Id.*, § 416.926a(e)(3)(i).

The ALJ must consider all the evidence in the case in making these determinations. *Id.*, § 416.926a(f)(1). "While the ALJ was not required to discuss all such evidence, 'in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not [to] rely upon, as well as significantly probative evidence he rejects.'" *Corley on behalf of C.M.C. v. Comm'r,* 752

4

F. App'x 635, 638 (10th Cir. 2018) (unpublished) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

## IV. DISCUSSION

The Court finds that the ALJ made no error in evaluating the medical opinions in the record of this case and sufficiently supported his opinions with substantial evidence.

### A. Evaluation of Medical Opinions

Plaintiff argues that the ALJ failed to comply with agency regulations governing how to evaluate the medical opinions contained in the record. Docket No. 11 at 10. While plaintiff's argument predominantly discusses the medical report of Dr. Mark Pendleton, *id*. at 10–13, the brief also mentions the report of Dr. William Morton. *Id.* at 6. The Court will presume that plaintiff contests the ALJ's evaluation of each report.

According to plaintiff, the ALJ was required to follow the detailed analysis set out in 20 C.F.R. § 404.1520c for each medical opinion.[3] *Id.* at 10. Under this regulation, for all relevant medical opinions, the ALJ must consider and articulate the weight of several factors. 20 C.F.R. § 404.1520c. These include the opinion's supportability and

---

[3] Defendant argues that the statements contained in Dr. Pendleton's report do not constitute "medical opinion" as defined by 20 C.F.R. § 416.913(a)(2) because they do not directly relate to claimant's limitations or restrictions on his abilities. Docket No. 14 at 11–13; *see also Dye v. Comm'r*, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (holding that doctor's letter did not meet the definition of "medical opinion"); *May J. v. Kijakazi*, 2022 WL 684372, at *5 (D. Idaho Mar. 8, 2022) (holding that a doctor's clinical findings and observations, test results, diagnoses, and treatment recommendations were not medical opinions because they did not address or assign any specific functional limitations regarding petitioner's abilities). However, the it is not necessary to determine whether the statements within Dr. Pendleton's report fit the narrow definition of medical opinion. As discussed below, assuming the report does contain medical opinions, the ALJ was not required to analyze the report under the framework provided in 20 C.F.R. § 416.913(a)(2).

5

consistency, the medical provider's expertise and relationship with the claimant, and other relevant considerations. *Id.* Plaintiff asserts that the ALJ should have weighed the medical opinions of Dr. Pendleton and Dr. Morton under these factors because the reports demonstrate that claimant has a marked impairment in his ability to acquire and use information and in attending to and completing tasks. Docket No. 11 at 11. The Court disagrees.

An ALJ is not required to discuss all the evidence in the record. *Corley*, 752 F. App'x at 638. Instead, he must discuss the evidence supporting his decision, "the uncontroverted evidence he chooses not [to] rely upon," and "significantly probative evidence he rejects." *Id.* Thus, the ALJ "will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, *as appropriate*." 20 C.F.R. § 404.1520c(a) (emphasis added).

Here, the medical opinions of Dr. Morton and Dr. Pendleton, consistent with the other medical opinions in the record, present no evidence that claimant suffered from a "marked" or "extreme" limitation. As plaintiff acknowledges in the opening brief:

> The results of Dr. Pendleton's diagnostic measures showed the following deficits: Mildly to moderately limited fine motor coordination. He also misspelled his name when writing with his left hand. Dr. Pendleton determined Claimant's sensory perception, selective attention, and sustained attention were normal. His overall level of processing speed and verbal memory was borderline normal. His overall level of executive function was mildly impaired. His verbal memory was borderline normal, nonverbal memory, language processing, reasoning was normal. His overall level of motor planning was "probably very mildly impaired."

Docket No. 11 at 8 (citations omitted). In Dr. Pendleton's report, determinations of impairment are separated into categories ranging from "Very Mild" to "Severe." R. at

365. Therefore, claimant's only limitation that could be considered "Moderate" is claimant's fine motor coordination, which plaintiff does not assert affects claimant's abilities to acquire and use information or to attend to and complete tasks. The regulations state that for a limitation to be "marked" it must be "more than moderate," though "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). Dr. Pendleton did not determine claimant's fine motor coordination was "more than moderate."

Turning from the diagnostic test results to the section of his report entitled "Implications for Everyday Functioning," Dr. Pendleton states that "[t]hese results also reflect many cognitive strengths and a few deficits that would be expected to affect [claimant's] success in everyday tasks and activities." R. at 366. Plaintiff asserts that these remarks by Dr. Pendleton demonstrate that claimant has marked limitations. Docket No. 11 at 11. Dr. Pendleton's report indicates that claimant "is likely to be more easily distracted, to respond more impulsively, to work more slowly, to make more errors (especially under time pressure), to encounter more difficulties with multi-tasking, and to mentally fatigue more quickly than others his age." R. at 366. Additionally, the report states that claimant "is apt to find it even more difficult than for the typical 12 year old to consider possible consequences (especially long-term consequences) of his behavior." *Id.* Neither these observations, nor any other part of Dr. Pendleton's report, indicate that claimant had a limitation which was "marked" and therefore "interferes seriously" with his ability to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).

Despite plaintiff's contention that the ALJ did not address Dr. Pendleton's opinion whatsoever, the ALJ cited to Dr. Pendleton's report to support his conclusion that

7

claimant had no marked limitation in acquiring or using information or in his health and physical wellbeing.  R. at 30, 36 (citing claimant's above average mathematics skill, reading comprehension, and IQ score).  Given that this report provides no suggestion that claimant had a marked limitation which the ALJ did not properly weigh or that the ALJ rejected, it was appropriate for the ALJ not to evaluate Dr. Pendleton's opinions under the framework enumerated in 20 C.F.R. § 404.1520c.

Dr. Morton's report similarly contains no opinions which indicate that claimant had a marked limitation in any relevant domain.  The report's summary, which plaintiff cites in the opening brief, Docket No. 11 at 6, states that claimant's deficits likely have a "moderate impact" on his ability to function in the following categories: "social; personal/behavior; concentration, persistence, and pace; and communicative."  R. at 356.  A review of the entire report shows that these "moderate" deficits were not serious limitations.  The ALJ repeatedly cited to the specific results of Dr. Morton's examination to show that claimant did not have a marked limitation in his ability to acquire and use information or to attend to and complete tasks.  R. at 29–30 (citing claimant's ability to recall word combinations, carry out Serial 3s with minimal errors, and answer abstract questions).  Dr. Morton's report, therefore, similarly fails to provide any evidence of a marked limitation which would have required the ALJ to evaluate the opinions in the report under 20 C.F.R. § 404.1520c.

The Court finds that the ALJ did not fail to comply with relevant regulations when determining whether claimant had a disability which qualified him for social security benefits.  Plaintiff does not argue that the ALJ's decision otherwise lacked the support of substantial evidence.  Therefore, the Court finds that the ALJ's decision was supported

by substantial evidence in the record as a whole and did not improperly apply the correct legal test.

### B. Harmless Error

Even if the ALJ were required by C.F.R. § 404.1520c to evaluate the opinions of Drs. Pendleton and Morton for their supportability and consistency, as well as the doctors' expertise and relationship with the claimant, the Court finds that this is harmless error since the ALJ would still have found claimant was not entitled to benefits. Not only did the ALJ state that his determination was based on a review of the entire record, R. at 27, but he also repeatedly cited both medical opinions as evidence that claimant had less than marked limitations in all relevant domains. R. at 29–36. Thus, an analysis of the proper weight due each opinion would not have changed the ALJ's ultimate determination that claimant was not disabled.

Without a showing of prejudice by the plaintiff, the Court will not reverse the decision of the ALJ under these circumstances. *Shinseki v. Sanders*, 556 U.S. 396, 406–08 (2009) (preserving a reviewing court's ability to conduct an independent harmless error analysis); *Adkins v. Colvin*, 645 F. App'x 807, 809 (10th Cir. 2016) (unpublished) (holding that the party challenging the agency's action has the burden of establishing prejudicial error).

### V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that claimant is not disabled is **AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED November 6, 2023.

                                    BY THE COURT:

                                    _____
                                    PHILIP A. BRIMMER
                                    Chief United States District Judge